UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TAMARA CARTER, *et al.*, | Case No. 2:20-cv-1232-KJD-VCF |
| Plaintiffs, | ORDER |
| v. | |
| ETHICON, INC., *et al.*, | |
| Defendants. | |

Presently before the Court is Defendants' Motion for Summary Judgment (#73). Plaintiffs filed a response in opposition (#89) to which Defendants replied (#90/91). Also before the Court is Plaintiffs' Motion for Partial Summary Judgment (#76). Defendants filed a response in opposition (#88).

I. Facts

Plaintiffs are citizens of the state of Nevada and all of Ms. Tamara Carter's ("Carter") treatment, as alleged in her amended Short Form Complaint, occurred in the state of Nevada. See Doc. No. 17. Carter was implanted with a Prolift Posterior and TVT-retropubic by Dr. Hsieh on July 23, 2010. Prior to these implant surgeries, she complained of symptoms consistent with stress urinary incontinence and pelvic organ prolapse such as pelvic fullness and the sensation that the "bladder was falling out." Carter experienced multiple mesh erosions following the implantation of the Prolift and TVT devices.

On October 31, 2011 Carter returned to Dr. Hsieh and was found to have an erosion at posterior vaginal wall which was, tender to palpation. On November 30, 2011 Dr. Hsieh trimmed the mesh exposure in the office and silver nitrate was applied to the region. On December 21, 2011, Carter returned to Dr. Hsieh complaining of heavy vaginal bleeding after sex and feeling mesh at the tip of the vagina near the opening. She also reported urinating 15 times per day. On

January 6, 2012, Dr. Hirsh performed a mesh extrusion repair, a surgical procedure, on Carter.

In May of 2012, Dr. Schwartz evaluated Carter for complaints of mesh exposure, vaginal pain, and bleeding. The exam again demonstrated a mesh exposure on the posterior vaginal wall. Carter again underwent a surgery to remove portions of the mesh. An additional mesh erosion was noted by Dr. Schwartz on February 6, 2013. Another mesh exposure was seen on October 31, 2014, which required another visit to the operating room in January of 2015. Later the same year in May, Carter again had surgery to repair an additional area of exposed posterior mesh. Carter had another surgical procedure on July 23, 2015, for the treatment of an autologous fascial sling. She continues to complain of dyspareunia and urinary frequency.

The physician who implanted Ms. Carter's Prolift and TVT device testified that he had reviewed and relied upon both IFU's prior to performing Ms. Carter's surgery. Dr. Hsieh also testified that at the time of implant, he was not aware that the Prolift mesh could rope or curl, or that there could be a chronic foreign body reaction from the mesh in the Prolift and TVT.

II. Standard for Summary Judgment

The purpose of summary judgment is to avoid unnecessary trials by disposing of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986); Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture, 18 F.3d 1468, 1471 (9th Cir. 1994). It is available only where the absence of material fact allows the Court to rule as a matter of law. Fed. R. Civ. P. 56(a); Celotex, 477 U.S. at 322. Rule 56 outlines a burden shifting approach to summary judgment.

First, the moving party must demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to produce specific evidence of a genuine factual dispute for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine issue of fact exists where the evidence could allow "a reasonable jury [to] return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court views the evidence and draws all available inferences in the light most favorable to the nonmoving party. Kaiser Cement Corp. v. Fischbach & Moore, Inc., 793 F.2d 1100, 1103 (9th Cir. 1986). Yet, to survive summary judgment, the nonmoving party must show more than

"some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

III. Analysis

    A. Failure to Warn

Nevada has adopted the learned intermediary doctrine. See Klasch v. Walgreen Co., 264 P.3d 1155, 1157-58 (Nev. 2011) (in the context of pharmacist/customer tort litigation). The Nevada Supreme Court relied upon the rationale for the traditional learned intermediary doctrine "used to insulate drug manufacturers from liability in products-liability lawsuits[, viz.,] . . . a drug manufacturer is immune from liability to a patient taking the manufacturer's drug so long as the manufacturer has provided the patient's doctor with all relevant safety information for that drug." Id. at 1158. "It is then up to the patient's doctor—who has the benefit of knowing the patient's specific situation—to convey to the patient any information that the doctor deems relevant." Id.

While the Nevada Supreme Court has yet to extend the learned intermediary doctrine to a prescription medical device action, the Federal District Court of Nevada has repeatedly done so, explaining that "[i]n the absence of case law to the contrary, the Court believes that the Nevada Supreme Court would apply the learned intermediary doctrine to prescription medical product liability cases." Flowers v. Eli Lilly & Co., No. 3:14-cv-0094-LRH-VPC, 2015 U.S. Dist. LEXIS 91298, at *7, n.3 (D. Nev. July 10, 2015) (Hicks, J.); see also Phillips v. C.R. Bard, Inc.,No. 3:12-cv-00344-RCJ-WGC, 2014 U.S. Dist. LEXIS 174506, at *23 (D. Nev. Dec. 16, 2014) (Jones, J.); cf. Schmidt v. C.R. Bard, Inc., No. 2:11-CV-00978-PMP-PAL, 2013 U.S. Dist. LEXIS 101963, at *4-5 (D. Nev. July 22, 2013) (Pro, J). This Court, too, predicts that the Nevada Supreme Court would apply the learned intermediary doctrine to a prescription medical product. Thus, the question is whether Plaintiff Tamara Carter's treating physician, Dr. Hsieh, was given an adequate warning of the risks involved in using the product at issue.

Defendant argues that Plaintiffs cannot establish proximate causation between any alleged failure to warn and Ms. Carter's claimed injury. Defendants argue that there is no duty to warn of dangers that are "generally known" by those to be warned, here, pelvic floor surgeons. See General Elec. Co. v. Bush, 498 P.2d 366,369 (citing Helene Curtis Industries, Inc. v. Pruitt,

385 F.2d 841, 858 (5th Cir. 1967)) ("Warning need not be given against dangers which are generally known"). If the physician had knowledge of the risk, "then the alleged failure to warn of the known risk is not considered a defect." Bellew v. Ethicon, Inc., No. 2:13-CV-22473, 2014 WL 6886129, at *2 (S.D. W. Va. Nov. 24, 2014) (internal quotation omitted); see also Odom v. G. D. Searle & Co., 979 F.2d 1001,1003 (4th Cir. 1992) (it is undisputed "that under the 'learned intermediary' doctrine, the manufacturer cannot be said to have caused the injury if the doctor already knew of the medical risk").

Having carefully reviewed the deposition testimony of Plaintiff Carter's treating physician, Dr. Hsieh, the Court finds that genuine issues of material fact prevent the Court from granting Defendant's motion for summary judgment. Construing the testimony in the light most favorable to Plaintiff, Dr. Hsieh may not have been provided with the accurate known risks and may have altered his advice to the patient about which procedure would work best for her (or put her at the most risk of product failure).

### B. Design Defect Claim

Defendants argue that summary judgment is proper on Plaintiffs' design defect claim because Plaintiffs have not established that any specific defect in the TVT and Prolift caused Ms. Carter's alleged injuries. To establish a design defect claim, Plaintiffs must prove: "(1) the product had a defect which rendered it unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer, and (3) the defect caused the plaintiff's injury." Fyssakis v. Knight Equip. Corp., 826 P.2d 570, 571 (Nev. 1992 (citing Ginnis v. Mapes Hotel Corp., 470 P.2d 135, 138 (Nev. 1970)). Viewing the facts in a light most favorable to Plaintiffs, there is sufficient evidence of causation to withstand Defendants' motion for summary judgment on the design defect claim.

### C. Manufacturing Defect Claim II

While a manufacturing defect claim does exist in Nevada, it requires proof that defendant "made the [product] 'wrong.'" Forest v. E.I. DuPont de Nemours and Co., 791 F. Supp. 1460, 1468 (D. Nev. 1992) (citing Restatement (Second) of Torts § 402(a); Amer. L. Prod. Liab. (Third) § 16.1, at 11 (1987)). Here, Plaintiffs have produced no evidence of manufacturing

defect. Therefore, the Court grants Defendants' motion for summary judgment on the claim for manufacturing defect.

### D. Count IV Strict Liability – Defective Product

Plaintiffs have failed to respond to Defendants' motion for summary judgment on this claim. Therefore, considering the claim on the merits and in accordance with Local Rule 7-2(d), the Court grants Defendants' motion for summary judgment on Count IV.

### E. Plaintiff's Negligence Claims

Plaintiffs allege several negligence-based claims. See Count I (Negligence), Count IX (Negligent Misrepresentation), Count X (Negligent Infliction of Emotional Distress), and Count XIV (Gross Negligence). Plaintiffs' negligence-based claims are based on the same series of facts as their strict liability claims. Because they are duplicative of and subsumed by the strict liability claims, summary judgment is granted as to Plaintiffs' negligence-based claims. See, e.g., Forest, 791 F. Supp. at 1464 (concluding that negligence and strict liability claims should be considered together "for purposes of considering Defendant's possible liability for failure to provide an adequate warning"); Forest v. Vitek, Inc., 884 F. Supp. 378, 380 (D. Nev. 1993) (noting that "there is no practical difference between an action in negligence for breach of one's duty to warn and an action in strict liability for a product defect due to inadequate warning or labeling").

Plaintiffs cite Sanchez v. Boston Scientific Corp., 38 F.Supp.3d 727 (S.D. W.Va. 2014) in support of their negligence claims, and also, attempt to distinguish Forest. In Sanchez, this Court ruled that because California does not recognize strict liability for defective design, the plaintiffs could pursue defective design under a negligence theory. Sanchez, 38 F.Supp.3d at 736. That is not the issue in this case-or Ethicon's argument in its motion for summary judgment. Nevada law recognizes strict liability for failure to warn, defective design, and defective manufacturing claims, and therefore the Sanchez ruling is inapplicable to this case. Similarly, Plaintiffs miscite Michaels v. Pentair Water Pool & Spa, 357 P.3d 387 (Nev. Ct. App. 2015) for the proposition that negligence and strict liability claims can be brought together. Michaels is distinguishable because the only issue on appeal was the plaintiff's strict liability claim- not a negligence claim.

Id. at 397 (in fact there is no reference to negligence in the case at all).

Finally, Plaintiffs fail to distinguish the Forest case. In Forest, the court ruled "that for purposes of considering Defendant's possible liability for failure to provide an adequate warning, Plaintiffs' negligence and strict liability claims should be considered together." 791 F. Supp. 1460, 1464 (D. Nev. 1992). Likewise, in Forest v. Vitek, Inc., the court considered the plaintiffs' negligence and strict liability theories together. 884 F. Supp.2d 378, 380 (D. Nev. 1993). The court's rationale in both cases applies here—there is no practical difference in Plaintiffs' negligence and strict liability claims in this case. Therefore, the negligence claims are subsumed in the strict liability claims.

### F. Fraud-based and Warranty Claims

Just like other cases that were part of the Ethicon MDL, Plaintiffs' fraud-based claims and warranty claims are simply repackaged failure-to-warn claims. See Huskey v. Ethicon, Inc., 29 F.Supp.3d 736, 744 (S.D. W.Va. 2014). If the learned intermediary doctrine "could be avoided by casting what is essentially a failure-to-warn claim under a different cause of action ... then the doctrine would be rendered meaningless." In re Norplant Contraceptive Products Liab. Litig., 955 F.Supp. 700, 709 (E.D. Tex. 1997). Accordingly, the Court predicts that, if confronted with this issue, the Nevada Supreme Court would hold that the learned intermediary doctrine applies to all claims based on a medical device manufacturer's failure to warn, including fraud, fraudulent concealment, constructive fraud, negligent misrepresentation, and breach of warranty. See, e.g., Huskey, 29 F.Supp.3d at 744-45; Bellew v. Ethicon, 2014 WL 6886129 at *5 (S.D. W.Va. November 24, 2014). Therefore, Defendants' motion for summary judgment on fraud-based claims and warranty claims is granted.

### G. Unjust Enrichment

In Nevada, unjust enrichment is a quasi-contractual claim synonymous with restitution. See, e.g., Bell v. GrupoBimbo, S.A.B. de C.V, No. 2:15-cv-02410-KJD-GWF (D. Nev. June 22, 2016). Plaintiffs' claim for unjust enrichment fails because the medical device was purchased through a third-party medical provider and any economic benefit they bestowed on Ethicon is too remote and indirect to be actionable under a theory of unjust enrichment or restitution.

Therefore, the motion for summary judgment on this claim is granted.

### H. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs move for summary judgment on Defendants' affirmative defenses based on contributory negligence, comparative negligence and comparative fault of Plaintiffs' physicians. Defendants do not oppose the motion except to argue the issues are moot. Accordingly, the Court grants the motion for summary judgment on affirmative defenses 42 and 51.

### IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (#73) is **GRANTED in part and DENIED in part**;

IT IS FURTHER ORDERED that Plaintiffs' Motion for Partial Summary Judgment is **GRANTED**.

Dated this 31st day of March, 2021.

_____
Kent J. Dawson
United States District Judge