UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TAMARA CARTER and DAVID CARTER,<br><br>　　　　　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>JOHNSON & JOHNSON; ETHICON. INC.;<br>and ETHICON LLC,<br><br>　　　　　　　　　　　　Defendants. | Case No. 2:20-cv-01232-KJD-VCF<br><br>ORDER |

　　　Presently before the Court is Plaintiffs' Motion to Preclude Testimony of Juan Carlos Felix, M.D. (#193). Defendant filed a response in opposition (#210).

　　I.　　Factual and Procedural Background

　　This is a products liability action involving two prescription medical devices– Prolift and TVT. On July 23, 2010, at St. Rose Dominican Hospital in Las Vegas, Nevada, Dr. Gregory Hsieh implanted a Prolift device for Plaintiff Tamara Carter's ("Mrs. Carter") posterior pelvic prolapse and a TVT mid-urethral sling for Mrs. Carter's stress urinary incontinence ("SUI"). Mrs. Carter alleges that these medical devices caused her injuries, and that Defendants are liable under claims of strict liability for failure to warn and for design defect. Her husband, Plaintiff David Carter ("Mr. Carter") raises a loss of consortium claim. Additionally, Plaintiffs claim that Defendants' conduct was malicious, oppressive, willful, wanton, reckless, and grossly negligent. Defendants ("Ethicon") deny Plaintiffs' allegations and assert that Prolift and TVT were state of the art at the time of implant, that Mrs. Carter's alleged injuries pre-dated her surgery, that Mrs. Carter assumed the risks, and that Mrs. Carter's own actions contributed to her injuries.

　　Dr. Juan Carlos Felix, M.D. ("Dr. Felix") is an expert witness for Ethicon. Dr. Felix is a board-certified anatomic pathologist with added qualification in cytopathology. His clinical and

academic activities during most of his career have consisted almost exclusively of activities in Gynecological and Obstetrical Pathology where he published over 110 peer-reviewed publications and authored eight textbook chapters. Mrs. and Mr. Carter have objected to his expert testimony and argue it should be excluded because "his opinions . . . are not scientifically reliable or proper.

II.  Analysis

**A. Legal Standard**

Fed. R. Evid. 702 permits a "witness who is qualified as an expert by knowledge, skill, experience, training, or education [to] testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." The Supreme Court gave expanded direction on Rule 702 in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). In Daubert, the Court held that Rule 702 imposed "a special obligation upon a trial judge to 'ensure that any and all scientific testimony… is not only relevant, but reliable.'" See Kumbo Tire Co. v. Carmichael, 526 U.S. 137 (1999). The Court expanded this gatekeeping obligation to all expert testimony. Id. at 147. Daubert "established that, faced with a proffer of expert scientific testimony, the trial judge, in making the initial determination whether to admit the evidence, must determine whether the expert's testimony reflects (1) "scientific knowledge," and (2) will assist the trier of fact to understand or determine a material fact at issue." Id. The "focus must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 580.

The Ninth Circuit has emphasized that "Rule 702 is applied consistent with the liberal thrust of the Federal Rules and their general approach of relaxing the traditional barrier to opinion testimony." Jinro Am. Inc. v. Secure Investments, Inc., 266 F.3d 993, 1004 (9th Cir. 2001). "An expert witness–unlike other witnesses–is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation, so long as the expert's opinion

1  [has] a reliable basis in the knowledge and experience of his discipline." Id. (citations and
2  quotation marks omitted).
3      In Daubert, the Court also clarified that parties should not be "overly pessimistic about the
4  capabilities of the jury and of the adversary system generally." Daubert, 509 U.S. at 596.
5  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the
6  burden of proof are the traditional and appropriate means of attacking shaky but admissible
7  evidence." Id. "The role of the Court is not to determine 'the correctness of the expert's
8  conclusions but the soundness of his methodology.'" Great W. Air, LLC v. Cirrus Design
9  Corporation, No. 2:16-CV-02656-JAD-EJY, 2019 WL 6529046, *3 (D. Nev. 2019). "The judge
10 is supposed to screen the jury from unreliable nonsense opinions… [t]he district court is not
11 tasked with deciding whether the expert is right or wrong, just whether his testimony has
12 substance such that it would be helpful to a jury." Id. at 4.

### B. Criticism of Dr. Iakovlev

14     In keeping with the Ninth Circuit's emphasis on "relaxing the traditional barrier to opinion
15 testimony" the Court finds that Dr. Felix's testimony criticizing Dr. Iakovlev is admissible.
16 Plaintiffs argue that Dr. Felix's opinions amount to nothing more than *ipse dixit* testimony.
17 However, Dr. Felix has the scientific, technical, and specialized knowledge to offer an opinion in
18 this case. He is a board-certified anatomic pathologist with added qualification in cytopathology.
19 He has specialized in the field of gynecology and obstetric pathology. His testimony regarding
20 weaknesses in Plaintiffs' expert's report is clearly within traditional limits of expert witnesses.
21 See, e.g., Dorn v. Burlington Northern Santa Fe Railroad Co., 397 F.3d 1183, 1195–96 (9th Cir.
22 2005) ("the [a]uthority to determine the victor in such a 'battle of expert witnesses' is properly
23 reposed in the jury" and "the reasonableness of the assumptions underlying the experts' . . .
24 analysis, [or] criticisms of an expert's method of calculation [are] matter[s] for the jury's
25 consideration in weighing that evidence").
26     His opinion comes from his personal experience including the histological analysis of over
27 150 vaginal mesh explants while a pathologist at one of the world's busiest gynecological
28 hospitals. His opinion also comes from an extensive review of scientific literature. Though

Plaintiffs accuse Dr. Felix of providing no scientific support, he detailed the many studies he relied on in his expert report. His report was supported by citations to over 70 specific sources in the medical literature and is accompanied by a 20-page general reliance list including nearly ten pages of pertinent literature.

### C. Mesh Degradation / Contraction / Cytotoxicity

Plaintiffs argue that Dr. Felix does not provide adequate support for his opinions that mesh does not degrade, contract or become cytotoxic. Felix, however, does not offer those affirmative opinions. Dr. Felix merely challenges Dr. Iakovlev's methodology for concluding that mesh does degrade, contract or become cytotoxic— issues on which Plaintiffs bear the burden of proof. As already held by the Court, one expert may properly criticize the methods of another.

Further, an expert can criticize another expert's methodology without affirmatively disproving the matter himself. See Cobb v. Dawson, No. 5:06-cv-066, 2007 WL 4373255 (M.D. Ga. Dec. 12, 2007) (permitting defendants' expert to criticize methodology used by plaintiff's expert in creating a life-care plan even though defendants' expert had not prepared a plan of her own); Faryniarz v. Nike, Inc., No. 00-Civ.-2623, 2002 WL 1968351, at *2 (S.D.N.Y. Aug. 23, 2002) ( "An expert can critique the methodology of the study of another expert without conducting an experiment of his own"); Bacardi & Co. Ltd. v. New York Lighter Co., Inc., No. 97-CV-7140, 2000 WL 298915 (E.D.N.Y. Mar. 15, 2000) (expert witness permitted to criticize methodology used by plaintiffs' expert in conducting a survey even though the expert had not conducted his own survey). Indeed, one court has observed that "[t]his type of testimony [is] much more informative than merely presenting those issues to [the opposing party's expert] on cross-examination" and that "it would be independently helpful to the trier of fact to hear these criticisms from an expert." Aero-Motive Co. v. Becker, No. 1:99-cv-384, 2001 WL 1698998, *4-6 (W.D. Mich. Dec. 6, 2001).

Expert witnesses are given "wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation, so long as the expert's opinion [has] a reliable basis in the knowledge and experience of his discipline." Jinro Am. Inc., 266 F.3d at 1004. Additionally, Plaintiffs can, within the bounds of the evidentiary rules, attack the credibility of Dr. Felix and

his opinion about mesh degradation, contraction and cytotoxicity. Ultimately, the Court is not convinced that he has not used appropriate scientific or medical methodology to form his conclusions. The Court is not tasked with determining whether the testimony is right or wrong, but only whether the "testimony has substance such that it would be helpful to a jury." Great W. Air, LLC, 2019 WL 6529046, at *3. Whether Dr. Felix or Dr. Iakovlev is correct is for the trier of fact.

III. Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Motion to Preclude Testimony of Juan Carlos Felix, M.D. (#193) is **DENIED.**

DATED this 29th day of September 2022.

_____
Kent J. Dawson
United States District Judge