1

2

3

4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

* * *

7

TAMARA CARTER and DAVID CARTER,

Case No. 2:20-cv-01232-KJD-VCF

8

Plaintiffs,

AMENDED ORDER

9

v.

10

JOHNSON & JOHNSON; ETHICON, INC.;
and ETHICON LLC,

11

12

Defendants.

13

Presently before the Court is Defendant's Motion to Limit Opinions of Brian Raybon, M.D.

14

(#197). Plaintiffs responded in opposition (#205) and Plaintiffs replied (#217).

15

I.     Factual and Procedural Background

16

This is a products liability action involving two prescription medical devices– Prolift and

17

TVT. On July 23, 2010, at St. Rose Dominican Hospital in Las Vegas, Nevada, Dr. Gregory

18

Hsieh implanted a Prolift device for Plaintiff Tamara Carter's ("Mrs. Carter") posterior pelvic

19

prolapse and a TVT mid-urethral sling for Mrs. Carter's stress urinary incontinence ("SUI").

20

Mrs. Carter alleges that these medical devices caused her injuries, and that Defendants are liable

21

under claims of strict liability for failure to warn and for design defect. Her husband, Plaintiff

22

David Carter ("Mr. Carter") raises a loss of consortium claim. Additionally, Plaintiffs claim that

23

Defendants' conduct was malicious, oppressive, willful, wanton, reckless, and grossly negligent.

24

Defendants ("Ethicon") deny Plaintiffs' allegations and assert that Prolift and TVT were state of

25

the art at the time of implant, that Mrs. Carter's alleged injuries pre-dated her surgery, that Mrs.

26

Carter assumed the risks, and that Mrs. Carter's own actions contributed to her injuries.

27

Dr. Raybon is a pelvic surgeon and urogynecologist who has been asked by the Plaintiffs to

28

give expert testimony concerning Prolift and Gynemesh PS, as well as how Ethicon trained

1   physicians and warned them of particular risks, and that Ethicon could have implemented safer

2   feasible designs. Defendant objects to his testimony and argues the testimony is outside the

3   scope of his expertise, is unreliable, lacks scientific support, or otherwise is inadmissible.

4       II.    <u>Analysis</u>

5           **a.  Legal Standard**

6       <u>Fed. R. Evid. 702</u> permits a "witness who is qualified as an expert by knowledge, skill,

7   experience, training, or education [to] testify in the form of an opinion or otherwise if: (a) the

8   expert's scientific, technical, or other specialized knowledge will help the trier of fact to

9   understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient

10  facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the

11  expert has reliably applied the principles and methods to the facts of the case." The Supreme

12  Court gave expanded direction on Rule 702 in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>,

13  509 U.S. 579 (1993). In <u>Daubert</u>, the Court held that Rule 702 imposed "a special obligation

14  upon a trial judge to 'ensure that any and all scientific testimony… is not only relevant, but

15  reliable.'" <u>See</u> <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137 (1999). The Court expanded this

16  gatekeeping obligation to all expert testimony. <u>Id.</u> at 147. <u>Daubert</u> "established that, faced with a

17  proffer of expert scientific testimony, the trial judge, in making the initial determination whether

18  to admit the evidence, must determine whether the expert's testimony reflects (1) "scientific

19  knowledge," and (2) will assist the trier of fact to understand or determine a material fact at

20  issue." <u>Daubert</u>, 509 U.S. at 592. The "focus must be solely on principles and methodology, not

21  on the conclusions that they generate." <u>Id.</u> at 595.

22      The Ninth Circuit has emphasized that "Rule 702 is applied consistent with the liberal thrust

23  of the Federal Rules and their general approach of relaxing the traditional barrier to opinion

24  testimony." <u>Jinro Am. Inc. v. Secure Investments, Inc.</u>, 266 F.3d 993, 1004 (9th Cir. 2001). "An

25  expert witness–unlike other witnesses–is permitted wide latitude to offer opinions, including

26  those that are not based on firsthand knowledge or observation, so long as the expert's opinion

27  [has] a reliable basis in the knowledge and experience of his discipline." <u>Id.</u> (citations and

28  quotation marks omitted).

In <u>Daubert</u>, the Court also clarified that parties should not be "overly pessimistic about the capabilities of the jury and of the adversary system generally." <u>Daubert</u>, 509 U.S. at 596. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." <u>Id.</u> "The role of the Court is not to determine 'the correctness of the expert's conclusions but the soundness of his methodology.'" <u>Great W. Air, LLC v. Cirrus Design Corporation</u>, No. 2:16-CV-02656-JAD-EJY, 2019 WL 6529046, *3 (D. Nev. 2019). "The judge is supposed to screen the jury from unreliable nonsense opinions… [t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." <u>Id.</u> at 4.

**b.  Dr. Raybon's Testimony About Ethicon's Training of Surgeons**

Ethicon argues that Mrs. Carter's surgeon met the standard of care required of him, and thus Dr. Raybon's opinion that Ethicon failed to adequately train surgeons is irrelevant. (#197, at 4). Defendant asserts that his opinion that Ethicon's poor training of surgeons caused some of the chronic pain in patients says little about the design of the mesh or the adequacy of its warnings and should thus be excluded. <u>Id.</u> at 6. Additionally, Ethicon argues Rule 403 precludes this testimony because it could confuse or mislead the jury to believe that Mrs. Carter's surgeon experienced difficulty implanting the device in Mrs. Carter. <u>Id.</u> Plaintiffs respond arguing that this testimony should be allowed because a consistent defense in these MDL cases have been that doctors were the ones who lacked skill to properly implant the devices. (#205, at 3). However, there is no claim in this case that Mrs. Carter's surgeon lacked adequate training or that he caused the complications for Mrs. Carter. Therefore, allowing Dr. Raybon to testify that Ethicon failed to properly train surgeons who implanted their devices as a way to refute a claim that has not been brought would be improper. The Court finds that this testimony does implicate Rule 403 and risks misleading the jury to consider irrelevant claims. Dr. Raybon can, however, testify as a lay witness subject to other rules of evidence about his personal knowledge regarding physician training. For example, his expert report says that a surgeon at his hospital performed a Prolift procedure having never been formerly trained. (#197-1, at 23–24).

### c.  Dr. Raybon's Testimony About Alternative Designs

Ethicon argues that Dr. Raybon's testimony about Ethicon having several alternatives to the design of Prolift kits that would have been safer is not supported by sufficient facts or data and is unreliable. (#197, at 7). Ethicon says that Dr. Raybon's entire basis for offering a specific alterative like PVDF is based on his review of internal Ethicon documents and nothing else. Id. Mrs. and Mr. Carter responded, arguing Dr. Raybon cites to a volume of Ethicon corporate documents that recognize the safety advantages of PVDF, but they also state there is no literature showing PVDF is safer because there is no PVDF pelvic product. (#205, at 4).

In his deposition, Dr. Raybon testified that he was unaware of any published medical material about PVDF. (#197-3, at 5). He also testified that PVDF material would be best, but that he doesn't have any specific material in mind other than PVDF, which is not currently a pelvic product in use. Id. Dr. Raybon testified he could opine on what materials would make a better product than what was currently used by Ethicon, but he was unaware of anything on the market that he could advocate as safer than Prolift+M. Id. at 6. The Court finds that Dr. Raybon is precluded from testifying that there are specific materials that existed at the time of Mrs. Carter's surgery that Ethicon could have used because Dr. Raybon has not provided support sufficient to justify that opinion.

However, Dr. Raybon is not precluded from testifying in general about what materials he believes could be used to produce a safer mesh. Dr. Raybon has extensive experience with mesh implantation and mesh repair, as well as the anatomical structure of the vagina and pelvic floor. Dr. Raybon also cites to many studies, not including Ethicon internal documents, that support his position that certain mesh materials cause complications. Id. at 31–43. His own experience with surgical procedures involving mesh material plus the studies he relies on to support his conclusion regarding properties of safe mesh material make his testimony on this issue admissible. Further, Defendant will have the opportunity to cross-examine Dr. Raybon and bring to light any weaknesses about his conclusions in front of a jury. Dr. Raybon may be wrong about his conclusions, but the Court is tasked only with screening the jury from unreliable nonsense opinions, which the Court finds is not the case here. See Great W. Air, LLC, 2019 6529046, at

*3.

### d.  Dr. Raybon's Opinion Concerning Ethicon's Internal Documents

Ethicon argues that Dr. Raybon's expert report contains proposed testimony on Ethicon's state of mind, knowledge, motives, intent, and other matters related to corporate conduct and ethics, and that Dr. Raybon's testimony is merely a narrative review of internal documents. (#197, at 10). Mrs. and Mr. Carter responded saying Dr. Raybon would not offer any state of mind testimony and that he would merely be stating basic facts. (#205, at 7).

Dr. Raybon's expert report implies that he could cross over into Ethicon's state of mind, and the Court finds he will be precluded from speculating on what Ethicon knew or intended. Additionally, the Court finds that anything from Dr. Raybon being offered as expert testimony that is simply narrating what has been said in internal Ethicon documents is precluded because it will not be helpful to a jury. See F. R. Evid. 403. Dr. Raybon has extensive clinical experience in pelvic medicine and reconstructive surgery, but there is nothing in his background that would qualify him as an "expert" such that he can report to the jury what Ethicon corporate documents say. (#197-1, at 26–28). If Plaintiffs want to bring in these documents, they can do so with an appropriate witness. Therefore, Dr. Raybon is precluded from testifying on Ethicon's state of mind and from offering expert testimony about what is stated in internal corporate documents.

III.   Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion to Limit Opinions of Brian Raybon, M.D. (#197) is **GRANTED**.

DATED this 30 day of September 2022.


_____
Kent J. Dawson
United States District Judge

- 5 -